[Civ. No. 1381. Fourth Appellate District.—January 18, 1935.]

H. W. COOK et al., Appellants, v. PEARL MIELKE, Respondent.

Halbert & Stone for Appellants.

Alex E. Nelson for Respondent.

ALLYN, J., *pro tem.*—Plaintiffs and appellants seek specific performance of a contract to purchase real property. As proof of the contract they rely upon a series of letters exchanged between the parties as furnishing the note or memorandum required by section 1624 of the Civil Code. Since all of the transactions between the parties relied on to prove the agreement of sale were had by correspondence, it follows that these letters must show first, that there was a contract between the parties and second, that there was a sufficient note or memorandum thereof to satisfy the requirements of the statute of frauds.

Appellants rest their proof of the alleged agreement upon five letters, as follows:

A letter from Cook to Mrs. Mielke, dated June 7, 1933, in which he offers to purchase her ranch for "a total of $8,000, possession to be given upon completion of the deal; $5,000 cash and the balance of $3,000 in a second mortgage at 6 per cent interest to be held by yourself . . . 30% of each year's crop to be applied against the principal and interest". Mrs. Mielke replied that "I would accept your offer if you would assume the $3,000 mortgage against the place".

On June 27th Cook, in response, wrote to Mrs. Mielke as follows:

"In reference to handling the deal for the full $8,000 I am afraid that is out of the question for me . . .

"I am not certain yet but I believe that I will be able to raise $6,000 to pay on the place instead of $5,000, but of that I am not certain yet. If so, it would leave only $2,000 for you to carry. That is the very best I can offer."

In reply to this letter Mrs. Mielke wrote on July 3d:

"Just received your letter of the 27th. and in answer will say that I will take you up on your proposition in the last letter, $6,000 down with a $2,000 balance to carry. I have a Mr. Guy Lewis looking after my place so suppose he rented it to the Armenians. He never wrote me but they could be given notice. So you could see him. Let me hear from you soon."

On July 10th, Cook wrote Mrs. Mielke:

"I am in receipt of your letter of the 3rd inst. in which you accept my offer of $6,000 cash and a $2,000 mortgage which is to be paid out from 30 per cent of each year's crop. On a basis of your acceptance I am ready to proceed to raise the $6,000 cash.

"I am applying for a loan of $3,000 from the Federal Land Bank. The rest I will have available as soon as the Federal Land Bank loan has been approved. According to Mr. Milton Seligman it may possibly take 6 weeks to complete the Land Bank loan. In the meantime they have asked that I secure an agreement to purchase the property pending approval of the loan. Accordingly I have had an agreement to sell drawn up for your signature and am enclosing my check for $10.00 herewith.

"Upon approval of the loan by the Federal Land Bank they require that a certificate of title be furnished them within 15 days. As I have no idea as to which abstract company they will request the abstract from I will recommend that you appoint the National Bank of Orosi as your agent in the sale of the property so that everything may be handled promptly upon the approval of the Federal Land Bank.

"If this meets your approval I believe the next move for you would be to forward to the bank at Orosi a deed to the property made out in the name of H. W. Cook and Berniece C. Cook, along with the following instructions:

"1. To instruct the abstract company to furnish the Federal Land Bank a certificate of title in the form required by them.

"2. To secure a release and pay off your mortgage to Mr. Akard with accrued interest.

"3. To pay accrued state and county taxes in the approximate amount of $550.

"4. To pay delinquent 1931 Alta Irrigation assessment in the approximate amount of $56.00.

"5. To accept a mortgage in your favor from myself and wife in the amount of $2,000 under the terms as specified in the agreement to sell and have the same recorded for you.

"6. To authorize the abstract company to withhold from the proceeds the cost of furnishing the certificate of title.

"7. To furnish you a statement of deductions from the $6,000 received and forward you the balance.

"Whatever the cost will be of handling the deal through the National Bank of Orosi will be paid by myself.

"Now about the house. . . . If it is agreeable with you I would like your permission to move into the house."

There was inclosed in this letter a proposed agreement signed by Cook in substance as follows:

"For and in consideration of the sum of $10.00, receipt of which is hereby acknowledged, the party of the first part agrees to sell to the party of the second part that parcel of land described as follows: 40 acres comprising the northwest quarter of the northeast quarter of section 8, township 16, range 24, M. D. B. and M. including all water rights, located in Tulare County, California, for the sum of $8,000.00 under the terms and conditions set forth hereinafter.

"Upon payment of the sum of $6,000 the party of the first part agrees to furnish a good and sufficient title to said land vested in the names of H. C. Cook and Berniece C. Cook, his wife.

"Party of the first part agrees to accept a mortgage for the balance of $2,000, with interest at the rate of 6 per cent from the party of the second part, said mortgage to become a lien upon said property subsequent to that of $6,000.00 under the following conditions:

"1. That the party of the second part agrees to pay all taxes and interest during the crop year of 1933; and

"2. That 30 per cent of the moneys received from subsequent crops from the above described property is to be

applied upon interest and principal of said mortgage of $2,000 until the full amount has been paid.

"It is further agreed between the parties hereunto that the sale of the above-mentioned property is subject to a lease made in favor of Charles Cowden for the year 1933 only upon the basis of 70 per cent of the crop to the tenant; that any moneys representing the owner's 30 per cent received from the sale of the 1933 crop prior to the transfer of the deed to the property shall be placed in escrow in the National Bank of Orosi until such transfer has been completed; thereafter the National Bank of Orosi shall pay said sums to said H. W. Cook.

"It is further agreed by both parties hereunto that this agreement shall be effective for 90 days from date and should the party of the second part fail to meet the above requirements of sale within said 90 days this agreement shall become null and void."

On July 27th, Mrs. Mielke wrote Cook that there were terms in the contract which she did not like and stated that she would make a trip to California to settle the matter.

On this record the trial court found "that no contract in writing or otherwise was made" and appellants submit their appeal on two propositions: first, that there was established a contract of sale evidenced by sufficient written memorandum and, second, that the court erred in not admitting evidence of oral statements subsequently made by the respondent to the effect that she had made a contract to sell the property to the appellants and had agreed to take a second mortgage to secure an unpaid balance of the purchase price.

It is hornbook law that a contract is made by a meeting of the minds of the parties through the medium of offer and acceptance, so we are first concerned in analyzing the evidence to determine whether this was accomplished. Appellant's first letter offered to buy the land at a price of $8,000, payable $5,000 cash and the balance to be secured as to principal and interest by a second mortgage payable out of 30 per cent of the annual crops. Respondent's reply clearly did not accept this offer but stated terms of $5,000 cash, appellant to assume in addition a $3,000 mortgage against the property. This clearly

was a counteroffer to sell and operated as a rejection of the original offer. In response to this, Cook wrote that he could not handle the full $8,000 purchase price but believed he could raise $6,000 instead of $5,000, leaving a balance of only $2,000 for Mrs. Mielke to carry. In this letter Cook also stated the amount of taxes and assessments against the property and inquired as to the status of persons occupying the dwelling on the ranch. In reply Mrs. Mielke stated merely that she would take Cook's proposition of $6,000 down with $2,000 balance to carry, asking that Cook. communicate with her soon. Unless this letter evidenced an acceptance of Cook's offer and furnished sufficient note or memorandum of their agreement appellants' case must fall. Assuming for argument that Cook's letter was an offer to pay $6,000 cash with a secured balance of $2,000 payable out of the crops, was there an acceptance thereof? Were the terms of the alleged offer and acceptance sufficiently definite and certain to constitute a contract? It is apparent that Cook himself did not consider them so for on July 10th he again wrote Mrs. Mielke asking her to forward a deed to be delivered by her agent bank and instructing it to furnish a certificate of title, to pay off an existing mortgage, to pay off taxes and assessments, to accept a mortgage in the amount of $2,000, to authorize the escrow holder to pay for the certificate of title, and to forward the balance of the purchase price to her. In this letter Cook also stated that he was applying for a Federal Land Bank loan of $3,000, that the balance of the money would be available when this loan was approved, and that it would require about six weeks to complete the loan. At the trial it appeared that Cook planned to raise the $3,000 balance of the cash payment through a second mortgage securing what is termed a Land Bank Commissioner's loan. It is apparent that throughout, Mrs. Mielke had in mind a second mortgage to secure her balance of the purchase price, while Cook was attempting to give her security in the form of a third mortgage. Cook further stated that the Land Bank had requested that he secure an agreement to purchase the property and accordingly inclosed a proposed contract. It provided merely for a 90-day option to buy and was in no sense binding upon him as vendee.

Clearly, at no point in the entire correspondence did the minds of the parties meet upon the elements essential to a contract, and hence it follows that there was no memorandum showing the material elements thereof. (*Wineburgh v. Gay*, 27 Cal. App. 603 [150 Pac. 1003].) Since there was no offer and acceptance in the letters of June 27th and July 3d, the letter from Cook on July 10th was at most a counteroffer which operated to reject Mrs. Mielke's proposal of July 3d, and since this counteroffer was definitely rejected, appellants' case must fall. The most that can be said of the whole transaction is that the parties were negotiating by correspondence for the sale of the ranch and that at no time did the minds of the parties meet by offer and acceptance sufficiently definite and certain in terms to make a contract. Since this is true it follows that there was no sufficient note or memorandum to satisfy the statute of frauds.

This conclusion makes it unnecessary to consider the second point of the appeal since clearly if the appellants failed to establish a contract to sell, any oral statement or admission of the respondent that she had sold the property and agreed to take a second mortgage for a balance of the purchase price would be immaterial.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.